**Commonwealth v. Reefer**

C.P. of Allegheny County, no. 8709591.

*Rebecca D. Spangler,* for Commonwealth.
*Kurt A. Grubschmidt,* for defendant.

FRIEDMAN, *J.,* May 1, 2001—Quite some time ago, defendant filed a pro se petition for modification of sen-

tence due to illness, alleging that the state correctional system cannot provide him the medical care he needs to preserve his life and asking the court to modify his sentence to permit him to be placed in an appropriate medical facility. The applicable statute is found at 61 P.S. §81. In order to assist the court in conducting an orderly hearing, counsel was appointed for defendant, and a hearing was held.

The medical evidence makes it clear that defendant's health is indeed precarious, at best, and the Commonwealth concedes this is so. The issue is whether the delicate balancing of defendant's medications can be maintained in the prison environment or whether he is now in so precarious a state that skilled nursing is the only way he can be adequately monitored and his medications promptly re-evaluated and adjusted.

Part of the difficulty with balancing and adjusting defendant's medications is that they are affected by stress. In defendant's case, as for virtually every prisoner, the stress of daily life is constantly high and beyond defendant's control. In addition, there is no doubt that defendant's prison experience has been more stressful than most. He was sentenced on June 21, 1989, in accordance with the guidelines, to 5-20 years in prison after conviction in a non-jury trial of the crimes of rape, statutory rape, involuntary deviate sexual intercourse, indecent assault, and corruption of minors. (He received credit for time served from March 10, 1989, when his bail was revoked, to the date of sentencing.) It was anticipated at the time of sentencing that he would be eligible for parole after five years so long as he behaved himself while incarcerated. Instead, the prison officials refused to rec-

ommended him for parole at his minimum because of his alleged refusal to complete certain counseling programs. An informal inquiry by the court after receiving a complaint from the defendant indicated that the defendant was not permitted to continue in the programs because he would not acknowledge his guilt. Eventually, this policy changed and defendant was allowed to participate without admitting guilt. However, the parole board continued to reject his applications for parole.

Thus, from defendant's point of view, he has been doing all that the correctional system has demanded of him, behavior that in the ordinary course should have resulted in his release in 1994. Instead, again from his point of view, he has been kept imprisoned for seven years more than contemplated by anyone (the court, the Commonwealth, the defendant) at the time of sentencing. While he would not use this adjective, his experience has been somewhat Kafkaesque. (It should be noted that the court assumes the finding of guilt was correct and so does not factor in the stress attributable to defendant's having been found guilty of particularly disgusting and heinous crimes. That is stress which society and the law require him to suffer.)

Another contributor to defendant's stress is his own personality—he lacks the ability to moderate his demeanor when interacting with others. If he feels badly treated, he does not suffer in silence—he demands proper treatment in no uncertain terms. To put it mildly, he lacks charm. He tends to grate on others even though he is not particularly aggressive. This is doubtless the source of many of the unfavorable perceptions others have had of him.

On top of the type of stress specific to defendant as well as the stress anyone would feel in a prison environment, defendant has a serious heart condition that cannot be corrected by surgery. He is kept alive only by carefully regulated medication and has the stress of knowing that fact. The prison system, according to the evidence, is using older medications that obviously have worked so far to keep defendant alive, but that are less reliable and harder to regulate than the latest medications otherwise available outside the prison setting.

Defendant's counsel has proved that defendant's precarious condition would get the required attention and monitoring only outside the prison setting, in a skilled nursing facility. He has proved that such a facility is available to elderly and ill criminals such as defendant. He has also proved that defendant himself, if released, would receive assistance in applying for a place in such a facility as well as in applying for the medical payment programs which would pay for his skilled nursing care.

The sole question for decision is whether 61 P.S. §81 (the statute) requires a prisoner's release where minimal care is being provided within the prison, but sufficient care, with much less risk of defendant's suddenly dying, can only be provided in a skilled nursing facility. (There is no contention that any prison in Pennsylvania contains skilled nursing facilities.)

The statute is fully quoted below:

"Whenever any convict or person is confined in any jail, workhouse, reformatory, or reform or industrial school, penitentiary, prison, house of correction of any other reason or purpose and it is shown to a court of

record by due proof that such convict or person is seriously ill, and that it is necessary that he or she be removed from such penal institution, *the court shall have power to modify its sentence, impose a suitable sentence, or modify the order of confinement for trial, as the case may be,* and provide for the confinement or care of such convict or person in some other suitable institution where proper treatment may be administered. Upon the recovery of such person, the court shall recommit him or her to the institution from which he or she was removed."

The italicized language clearly gives this court the *power* to grant defendant's motion either by modifying the original sentence or by modifying the order of confinement.

The statute was passed in 1919 and most of the published cases under it do not involve facts similar to the instant case. The first published case under the statute seems to be *Commonwealth v. Frasco,* 20 Sch. 363 (1924). In *Frasco,* the affidavit of the prison physician stated only that because the defendant was "an old man 80 years old, I consider [him] a case that should not be confined in prison, as on account of his age, physical condition, and matters of a chronic nature, the jail [is] no place where proper attention can be given, and therefore would recommend him to the Schuylkill County Almshouse, Schuylkill Haven, Pa. where they can give him the proper attention and nursing required for a person in advanced years." The trial court denied the petition because it found that the doctor's affidavit did not "constitute due proof that [defendant] is so seriously ill that his removal to another institution for proper treatment is necessary." 20 Sch. at 364. The court also noted that another statute then in effect, the Act of May 10,

1921, P.L. 433, §2, provided that prisoners whose physical conditions were not good were to be segregated in the prison from those in good health. In the instant case, the seriousness of defendant's condition is undisputed. *Frasco* is therefore inapposite.

The next case is *Commonwealth v. Morse,* 27 Lacka. Jur. 201 (1926). In *Morse,* the defendant, while under a sentence of six months' imprisonment and a $600 fine, was taken to the hospital for treatment of appendicitis. His jail term expired while he was still in the hospital. The defendant voluntarily paid for his medical expenses, which amounted to $238.90, and sought to have that amount offset against his $600 fine, based upon the provisions of 61 P.S. §81. The trial court refused this request because the defendant had *voluntarily* taken it upon himself to pay for his medical expenses. There is nothing similar to the instant case in *Morse.* It is clearly inapposite.

There were then no published cases until 1980, when the first appellate decision was published, *Commonwealth v. Landi,* 280 Pa. Super. 134, 421 A.2d 442 (1980). The defendant in *Landi* argued, inter alia, that, based on 61 P.S. §81, it was cruel and unusual to sentence him to a term in prison because he was a paraplegic. The trial court disagreed because defendant, "although obviously disabled, . . . is not seriously ill and incarceration poses no threat to his physical welfare." 280 Pa. Super. at 139, 421 A.2d at 444. Again, in the instant case, unlike *Landi,* the seriousness of the illness is undisputed. The issue in the instant case is how great "the threat to [Mr. Reefer's] physical welfare" is. The holding in *Landi* is therefore inapplicable here.

Other appellate cases are *Commonwealth v. Lyles,* 77 Pa. Commw. 15, 464 A.2d 712 (1983); *Commonwealth v. O'Neil,* 393 Pa. Super. 111, 573 A.2d 1112 (1990); and *Warren v. Pennsylvania Department of Corrections,* 151 Pa. Commw. 46, 616 A.2d 140 (1992). The Commonwealth also asked this court to consider the *unpublished* decision in *Commonwealth v. Grosso,* Superior Court no. 451 Pittsburgh 1994, a suggestion that had to be declined.[1]

In *Lyles,* the defendant had escaped from prison and suffered multiple gunshot wounds while being recaptured, as a result of which he became a paraplegic. It was ordered that the defendant serve his sentence at a United States Government hospital until he had sufficiently recovered to be placed in a state correctional institution. Attempts to place him at a United States Government hospital failed, during which time the defendant remained at a state correctional institution. The defendant then filed a petition for modification of sentence under 61 P.S. §81. The trial court *granted* the petition, modifying defendant's sentence to "30 years probation, releasing [defendant] into the custody of his parents pending admission to an appropriate rehabilitative institution *at the cost of the Commonwealth.*" 77 Pa. Commw. at 17, 464 A.2d at 713.[2] (emphasis added) On appeal, the Commonwealth did *not* dispute the trial court's determination that defendant was not receiving proper treatment at the state cor-

1. Unpublished decisions may not be relied upon or cited for precedential value. *Commonwealth v. Phinn,* 761 A.2d 176 (Pa. Super. 2000).

2. The appeal of *Lyles* was transferred to the Commonwealth Court by the Superior Court because it involved the potential payment of defendant's medical bills by the state Department of Public Welfare.

rectional institution, nor did it dispute that the court had the authority to modify defendant's sentence to probation. The Commonwealth only disputed that it had to *pay* for defendant's treatment while he was on probation. The appellate court reversed the trial court on this one point only, observing that "[w]hile the correctional system is duty bound to arrange for all the necessary medical care of persons within its control, the correctional system is not a medical provider and should not be considered solely liable for the expense of treatment of every person who at some point is placed in the system." 77 Pa. Commw. at 18-19, 464 A.2d at 714. (citations omitted) In the instant case, no one has demanded that the Department of Corrections pay for defendant's medical care outside the prison. However, the other facts related to the seriousness of the inmate's condition and to the portion of the trial court's opinion that was not reversed are very similar to the facts of the instant case.

In *Commonwealth v. O'Neil,* 393 Pa. Super. 111, 573 A.2d 1112 (1990), the defendant's arguments were not made based on 61 P.S. §81. Rather, he had argued that because he had tested positive for HIV, it was per se cruel and unusual punishment to sentence him to incarceration. The Superior Court disagreed, observing that defendant's sentence *could be modified* under 61 P.S. §81 if he should show symptoms of AIDS. *O'Neil* supports the conclusion reached by the undersigned that the statute gives the court the power to modify the sentence itself.

In *Warren v. Pennsylvania Department of Corrections,* 151 Pa. Commw. 46, 616 A.2d 140 (1992), the defendant filed a petition for review with the Commonwealth Court, seeking, inter alia, transfer to an institution which

could care for the symptoms of his hemophilia, based on 61 P.S. §81. The Commonwealth Court concluded it did not have jurisdiction to consider the portion of the petition based on 61 P.S. §81, since that statute clearly provided that such applications had to be made to the trial court. *Warren* therefore is only apposite to the issue of jurisdiction, which is not in dispute in the instant case.

The most recent published cases from the courts of common pleas are *Commonwealth v. Zeppadoro,* 109 Montg. Cty. L.R. 42 (1981); *Commonwealth v. Lanehart,* 15 D.&C.4th 599 (Fulton Cty. 1992); and *Commonwealth v. Mausteller,* 26 D.&C.4th (Monroe Cty. 1994). In *Zeppadoro,* the defendant's petition for modification of sentence was granted and his sentence of incarceration was changed to probation. This was based on testimony that defendant was "an obese, 34-year-old man suffering from long-standing heart disease, arteriosclerosis, hypertension and diabetes. . . . Defendant testified that his symptomology (angina, shortness of breath) increased markedly at Graterford, where he was housed in a hospital unit. In addition, he developed new symptoms—'cold sweats,' numbness of extremities, dizziness and blurred vision in the left eye. Although he should be on a low-fat, low-sugar and salt diet, he in fact receives standard prison fare. He has not regularly received insulin." Defendant's physician testified that in his opinion, incarceration would likely lead to defendant's death. The trial court *granted* the petition because it concluded that there was no other institution which was appropriate for defendant and that it was incarceration itself which was causing defendant's condition to worsen. *Zeppadoro* is quite similar to the instant case, where incarceration

causes Mr. Reefer's medications to need more careful monitoring than a less stressful environment might entail.

*Lanehart* involved a defendant who was a paraplegic and who did not claim that the state correctional institution could not *provide* necessary care, but rather claimed that "his medical care has been *neglected, i.e.,* that bandages have not been changed frequently enough, he has not been administered proper antibiotics, and that the physicians who treat him are incompetent." 15 D.&C.4th at 602-603. (emphasis added) The trial court denied his petition for release from custody under 61 P.S. §81 saying that defendant's complaints were about the *quality* of his medical care, which was not grounds for relief under the statute. The *Lanehart* trial court pointed out that *Landi* says the statute applies "only to those prisoners who become seriously ill *while in* prison" (emphasis added) and that defendant Lanehart "was 'ill' *prior* to going to prison." *Id.* at 602. (emphasis in original) This was the basis for the *Lanehart* trial court ruling as a matter of law that it was not necessary to remove the defendant for treatment: He was *sent to prison with the serious condition.* Another way of looking at the issue in *Lanehart* is in terms of res judicata. At the time of incarceration, the seriousness of his medical condition was known and considered and was found not to be a reason not to incarcerate him. *Lanehart* is inapposite to the instant case.

In *Mausteller,* the defendant suffered a fall subsequent to his conviction but while he was free, pending appeal. He petitioned the court to further delay his incarceration or restructure his sentence to house arrest. The physi-

cian who performed an independent medical exam reported that defendant had suffered "numerous orthopedic fractures and injuries . . . . He continues with outpatient therapy three times a week . . . . I believe [defendant] is in need of continued physical therapy and rehabilitation sessions to reach his maximum level of recovery . . . . Proper classification and early placement to a state facility that can accommodate this gentleman would be most beneficial." 26 D.&C.4th at 262-63. Without further discussion, the trial court denied defendant's petition. It seems clear that the medical issues in *Mausteller* were not of the life-threatening nature presented by the instant one.

The facts of *Lyles* and *Zeppadoro* are the closest to the instant case. Both the Commonwealth Court (in *Lyles*) and the Superior Court (in *O'Neil*), albeit in dicta, have confirmed that if "all the necessary medical care" cannot be provided in prison, the sentencing court has the power under the statute to modify the sentence originally imposed. For the instant defendant, the "necessary medical care" includes either more frequent monitoring of defendant's medication or substantially less stress in his daily environment. The Department of Corrections cannot provide either. The petition must be granted. See order filed herewith.

## ORDER

And now, to-wit, May 1, 2001, after a hearing the defendant's petition for modification of sentence due to illness is hereby granted pursuant to 61 P.S. §81, and the sentence previously imposed at CC no. 8709591, is hereby modified as follows:

• At Count 1, rape (section 3121(1)), five years to 12 years and three months, followed by a period of seven years and nine months probation.

• At Count 3, involuntary deviate sexual intercourse (section 3123(1) and (2), five years to 12 years and three months, followed by a period of seven years and nine months probation, to be served concurrently with the sentence at Count 1.

• At Count 5, corruption of minors (section 6302), two and one-half to 5 years, to be served concurrently with the sentences at Counts 1 and 3.

• At Counts 2, statutory rape (section 3122) and 4, indecent assault (section 3126(1)), no further penalty by reason of merger with first count.

It is further ordered that defendant shall receive credit for time served from March 10, 1989 through the date of this order.

It is further ordered that defendant shall be furloughed, to the custody of his sister, for a period of four weekdays, at a time convenient to counsel for defendant and arranged by the State Correctional Institution in consultation with said counsel, so that defendant may make the necessary applications for medical assistance and the skilled nursing facility.

It is further ordered that, upon the expiration of his modified sentence, and as a condition of probation, defendant shall reside in the skilled nursing facility described during the hearing hereon, shall comply with all the rules and regulations of said facility in addition to all rules and regulations of the probation office, and shall avoid all contact, whether by phone, mail or in person, with the victim and the co-defendant in this case.